## FIBER CONDUIT CO. v. BANKAMERIC CORPORATION et al.

District Court, S. D. New York. October 5, 1927.

No. 32–281.

Patents ⊕⟝328—Richardson & Coggeshall, I,-530,200, for underfloor conduit system for electric wiring, held valid and infringed as to process claims 3 and 20, and not infringed as to product claim 7.

Richardson & Coggeshall patent, No. 1,-530,200, claims 3 and 20, for process of constructing underfloor conduit system for electric wiring, *held* not anticipated, valid, and infringed; claim 7, for product, when limited to the product of the process covered by claims 3 and 20, also *held* valid but not infringed.

In Equity. Suit by the Fiber Conduit Company against the Bankameric Corporation and others. Decree for complainant in part.

Knight Bros., of New York City (Harry E. Knight and Clifton V. Edwards, both of New York City, of counsel), for plaintiff.

Pennie, Davis, Marvin & Edmonds, of New York City (Dean S. Edmonds and Leslie B. Young, both of New York City, of counsel), for defendants and intervener.

HUTCHESON, District Judge. This is an action to establish the validity and to recover for the infringement of the Richardson & Coggeshall patent, No. 1,530,200, covering an underfloor conduit system for electric wiring.

The claims in suit are No. 3 and No. 20 of the patent, which describe the process thus:

"3. The steps in a method of building which comprise constructing a floor slab including a wire duct within and substantially parallel with the floor surface of the slab, cutting through the slab into the duct at a

point determined by the location of a device to be supplied with current, applying a fitting to the duct and filling the space around the fitting with cementitious material."

"20. The method of laying and utilizing conduit in floors which comprise placing the conduit on a lower course of the floor, then applying filling material around and over the conduit, then covering the whole with a continuous integral surface floor and subsequently cutting through the surface floor and into the conduit and applying an outlet fitting, and introducing the wiring,"

—and claim 7, described by plaintiff as a "product claim, in which the structural elements making up the completed combination of means employed in carrying out the idea of an underground conduit system are set out." This claim reads as follows:

"7. In combination a floor slab, also a duct within the slab, a fitting having a part narrower than the duct adapted to be fitted into the upper part of the duct and extend through the floor to the surface."

The defendant admits infringement in connection with some small installations of claims 3 and 20, if valid, but asserts that these claims are not valid, and, as to claim 7, it takes the position, both that the claim is not valid, and, if valid, is not infringed.

The usual defenses of anticipation by prior patents are presented, with the difference here that a prior patent to Alexander, applied for and issued to him in 1907, together with the construction work of the B. & O. building in Baltimore, which Alexander had theretofore done under contract, and the idea of which he later obtained patent for, is claimed by the defendant to be the identical thing described in plaintiff's patent.

It must be conceded that Alexander's flush conduit system, which (notwithstanding the incidental reference in this patent to the possibility of covering them, and that linoleum was over some of them and wooden flooring over some in the B. & O. building) must be treated as his system, is very close to the Richardson idea.

At first blush it would appear that it ought to be held that there was no invention over Alexander in a system which buried the conduit under the regular floor thickness, but reflection I think shows the incorrectness of that conclusion.

While it is true that no one can patent an idea as such (O'Reilly v. Morse, 15 How. 112), it is also true that the idea which the device embodies is the life of the invention.

Here the idea that immense building operations could be conducted with secure and reasonable provision made for the installation of the electrical devices and instruments when actually required, without the necessity of a predetermined plan, which, in view of the immense spaces used, and the inability to arrange for their use in advance, was impossible, presents, not an evolution from Alexander, whose idea was that these conduits should be exposed, but a revolution, in that the thing which he had labored to do to expose his conduits, they by one stroke reversed.

I am therefore of the opinion that claims 3 and 20, for the process of an underground system to be tapped when necessary as occasion should require, are valid claims, that plaintiff is entitled to protection thereon, and that for the infringement of such claims defendants must account.

As to claim 7, I think it clear that this claim should either be construed as the product claim of 3 and 20, and the other structure claims in the patent, and, if valid, must be limited to that process of first laying, and thereafter cutting into, the floor and the conduit, or, if it is construed as broadly as plaintiff asks, and so to give plaintiff the right to prevent preset constructions, such as that of defendant, then it is itself anticipated by Alexander, which was certainly broad enough to cover, and which did present, the very idea of having the conduit with the openings in it at the floor surface.

In short, the Richardson & Coggeshall patent in my opinion involves invention, when construed as presenting the idea of a process by which smooth floors may be laid over conduits and installation thereafter made easily, and without injury to or disturbance of the floor.

But it does not involve invention if his idea be construed so broadly as to cover bringing the conduit service to the floor, either by means of laying the conduit flush with the floor, or bringing presets up to it before the floor is laid.

In short, so close is Alexander's disclosure to this patent that it cannot live except as limited to the precise difference between the two, and, if extended as plaintiff would seek to do, to cover all forms of conduits constructed where the tapping into the conduit is done by a device of less diameter than the conduit, Alexander had already patented that idea, and the B. & O. building contained a perfect instance of it.

Plaintiff states defendant's position very

well, and I agree with defendant in that position: "Defendant's argument, in substance, is that there should be read into claim 7 the requirement that the outlets shall not be installed until some time later than the first installation; that otherwise the claim would be anticipated by Alexander."

While I think that the Alexander disclosure clearly anticipates plaintiff in his effort to read claim 7 as broadly as he does, I think also that the prior practice of junction boxes on prearranged outlets is sufficient warrant for the defendant in the use of his structure.

Plaintiff's insistence that the real idea lies in the fact that the fittings are of less diameter than the conduit, is I think wholly unsound. If I agreed with him that this was all the idea plaintiff had, I should hold his patent invalid.

My impression of the whole case is that plaintiff should have a decree establishing the validity of his claims 3, 20, and 7; claim 7 to be read in the light of the specifications, drawings, and the other claims as limited to a structure, the product of the process of Nos. 3 and 20.

As so limited—that is, so read—defendant should be adjudged to have infringed these claims in all cases of all installations made by later cutting into the ducts, but should be adjudged as not guilty of infringement on the "preset" system.

Something has been said in the briefs of plaintiff suggesting that the present system is a mere blind or subterfuge in order to use the underfloor conduit, with the process of going into the conduit after installation.

Of course, if the "preset" system is not practical, and is not actually used by the defendants, if it is a mere stalking horse behind which they move to employ plaintiff's system, there would be infringement, not because the "preset" is an infringement, but because it would be found that defendant was in fact using the plaintiff's system, and that the "preset" outlets were a sham.

There is no evidence before me upon which I could make such finding. On the contrary, it appears from the number of preset installations that they are practical, and intended to be used, and that there is no intention of using plaintiff's system except in an emergency, or unprovided cases, for which, of course, defendants must pay.

A judgment of noninfringement then will be entered as to this preset device, without prejudice to the right of plaintiff, in this or any other case, to prove, as he can, that its use is not real, but a subterfuge.